Martin, J.
This is an action for the rescission of the sale of a negro woman, on the ground that she was attacked with the malady of which she died soon after the sale, previous and at the time of the contract. The defence is, that the defendant, finding that the woman was sick, had her sold at auction, on the 2d of May, when she was struck to the plaintiff. That soon after, the plaintiff informed him he would not take the woman, as she was sick; to which the defendant replied, he thought he was bound to take her, as she had, according *31 to the defendant’s orders, been sold, with the only warranty of the redhibitory diseases; that on the 9th, the plaintiff informed him, he would accept the sale, and the defendant executed the bill of sale for her to the plaintiff, before a notary-public.
East'n District.
May, 1821.
There was judgment for the plaintiff, and the defendant appealed.
The defendant, by interrogatories, drew the following facts from the plaintiff:—
The plaintiff, after the auction, and before the execution of the sale before the notary, told the defendant he would not take the wench, as he had discovered that she was sick: to which the defendant replied, he did not know whether she was, but that, at all events, he meant to sell, and had actually sold, her as he had bought her, i. e. with a warranty of all redhibitory diseases. To the best of the plaintiff’s recollection, of the correctness of which he declared himself sure, the defendant did not say, that unless the plaintiff could prove that the woman's disease was a redhibitory one, he could not help taking her, as those only were warranted against. Some days after, and in consequence of the defendant’s declarations, the parties met at the notary's office, and executed the act of sale.
*32 The statement of facts shews—that
Dr. Dow deposed, that he was called upon to see the woman, just after the defendant bought her, and recognised her as a patient whom he had visited at her former mistress’s seven months before; at that time she laboured under an intermittent fever, occasioned by a suppression of the menstrual discharge; he ordered the ordinary remedies, wine, bark, and a generous diet, with exercise; when he saw her at the defendant’s, he found her weak, her legs swollen, and told him a generous diet and proper medicines would effect her cure; and as he did not consider her as incurable, and as she was a valuable servant, he advised him to have her well attended. He has not seen her since.
Dr. Dupuy said, he was called upon by the plaintiff, to the woman, she appeared very sick, and he supposed her incurable. He attended her from the 17th of May, 1818, till the 13th of June, when she died; on the second day of his attendance, she was in a state of complete marasme, with all the symptoms of a chronic disease in its last stage; her legs swollen. He attended her carefully, but, as he had supposed, to no purpose. The disease he believes *33 was of seven or eight months standing, and quite incurable when he saw her.
Giguel, the plaintiff’s brother-in-law, deposed, he knew the woman, who had before been his property. The defendant applied to him before he bought her, and he told him she was a good servant. He did not know her to be sick before she died at his house, on the 13th of June, the plaintiff having put her there.
It is contended, that the plaintiff cannot recover, as the sickness of the slave was known to him at the time of the execution of the act of sale.
It is not easy to conclude, from the evidence in the case, that he knew the disease was an incurable one; and he had the plaintiff’s assurance, that if it was a redhibitory one, it was warranted against; so that our sole inquiry is, was the disease a redhibitory one?
Ailments or infirmities constitute redhibitory defects, when they are incurable by their nature. So that the slave subject thereto is absolutely unfit for the services for which he is destined, or these services are so inconvenient, difficult and interrupted, that it is to *34 be presumed, the buyer would not have bought her at all, if he had been acquainted with the defect; or that he would not have given so high a price, had he known that such a slave was subject to that sickness or infirmity. Civ. Code, 358, art. 80.
I understand this to mean, if the buyer knows the nature of the disease, i. e. that it is incurable. In the present case, the disease existed before the sale, and though curable in its origin, had now become incurable. This certainly was not known to the plaintiff; for who can believe, that if it was, he would have bought? He knew the slave to be sick, informed the vendor of it, and received for answer, that she was sold with a warranty of redhibitory diseases; among these, the law has classed incurable ones, such as that under which the slave laboured. It appears to me, the parties contemplated, that the vendee's claim would depend on the issue of the disease.
I think we ought to affirm the judgment of the parish court.